**O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOUTHWEST CARPENTERS PENSION TRUST; and ITS BOARD OF TRUSTEES,<br><br>            Plaintiffs,<br>      v.<br><br>PARAMOUNT SCAFFOLD, INC., a California corporation; CALIFORNIA ACCESS SCAFFOLD, LLC, a California limited liability company,<br><br>            Defendants. | Case No. 2:16-cv-6989-ODW-GJS<br><br>**ORDER GRANTING PLAINTIFFS' REQUEST FOR DEFAULT JUDGMENT [25]** |

## I.   INTRODUCTION

Plaintiffs Southwest Carpenters Pension Trust ("Pension Trust") and its Board of Trustees ("Board") (collectively, "Plaintiffs") request default judgment against Defendant Paramount Scaffold ("Paramount").   (ECF No. 25.)   For the reasons discussed below, the Court **GRANTS** Plaintiffs' request for default judgment and **ORDERS** Paramount to respond to Plaintiffs' request for information by filing a written response with this Court **within 60 days of the date of this Order**.

## II.   FACTUAL BACKGROUND

Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act

of 1980 ("MPPAA") to collect payment of withdrawal liability and other damages and costs from Paramount pursuant to 29 U.S.C. §§ 1381, 1132(g)(2) (2012).[1]

(Compl. ¶¶ 22, 35, ECF No. 1.)

As a preliminary matter, the Court will not ascertain whether Paramount and co-defendant California Access Scaffold ("CAS") are under common control. It will limit its discussion relevant to the issue of common control to Plaintiffs' request for Paramount to provide relevant documents in response to Plaintiffs' September 19, 2013, letter, pursuant to 29 U.S.C. § 1399(a).[2] (Compl. ¶ 25; Investigation Letter; Mot. for Default J. 3:26—6:12.).

Plaintiffs allege that Pension Trust is a trust fund that provides employees in the building and construction industry with pension benefits under a collective bargaining agreement, per 29 U.S.C. § 186(c)(5). (Compl. ¶¶ 5, 11.) Plaintiffs also allege that Pension Trust is a multiemployer pension benefit plan ("Plan"), as defined in 29 U.S.C. §§ 1002(37)(A), 1301(a)(3). (*Id.* ¶ 5.) Further, Plaintiffs allege that the members comprising the Board are individually "fiduciaries," per 29 U.S.C. § 1002(21)(A), and collectively make up the "plan sponsor," per 29 U.S.C. § 1301(a)(10)(A). (*Id.* ¶ 6.)

---

[1] Plaintiffs cite 29 U.S.C. § 1301 regarding Paramount's liability for withdrawal liability payments, but this is merely a "[d]efinitions" section that does not discuss the calculation of an employer's liability. Accordingly, the Court references 29 U.S.C. §§ 1381, 1132(g)(2) as the relevant statutes for withdrawal liability payments.

[2] In 2011, Paramount declared bankruptcy, and on March 26, 2012, Paramount's assets were sold to CAS for $3,500,000. (Compl. ¶ 13.) Plaintiffs allege that Paramount remained contractually bound by the provisions of the collective bargaining agreement although Paramount ceased business operations. (*Id.* ¶ 19.) Plaintiffs allege that CAS is Paramount's successor and that consequently, CAS and Paramount are trades or businesses under common control pursuant to 29 U.S.C. § 1301(b)(1). (*Id.* ¶¶ 8, 18, 23—24, 26.) Plaintiffs sent a letter dated September 19, 2013, to Paramount and CAS requesting information in order to determine whether the two companies are under common control. (*Id.* ¶ 25; Investigation of Complete or Partial Withdrawal of Paramount from the Pension Trust ("Investigation Letter"), Ex. C, ECF No. 1.) Paramount did not respond, and CAS replied by email, stating that it was not in a position to respond. (Compl. ¶ 25; CAS Email, Ex. D, ECF No. 1.) Because the question of whether Paramount and CAS are under common control is not dispositive as to the pending motion for default judgment, the Court declines to make a determination on the subject in this Order.

Plaintiffs' Complaint states that on November 13, 1998, Paramount became a signatory to a collective bargaining agreement ("MLA") with Southwest Regional Council of Carpenters and, consequently, a contributing employer to the Pension Trust.[3]  (*Id.* ¶ 9; Amended and Restated Agreement ("Agreement"), Ex. A, ECF No. 1; Southern California Master Labor Agreement ("MLA"), Ex. B, ECF No. 1; Mot. for Default J. 9:15—18, ECF No. 25-1.)  Per the MLA, Plaintiffs allege that Paramount was required to pay contributions to Pension Trust on behalf of its employees and comply with the Amended and Restated Agreement that established the Pension Trust. (Compl. ¶¶ 9—10; Agreement.)

Plaintiffs state that on December 31, 2013, Paramount made a complete withdrawal from participation in the Plan according to 29 U.S.C. § 1383(a).  (Compl. ¶ 22; Mot. for Default J. 9:18—21.)  Under 29 U.S.C. § 1381(a), an employer that completely withdraws from a multiemployer plan is liable to the Plan for the amount calculated under 29 U.S.C. §§ 1381(b), 1391.  In accordance with 29 U.S.C. § 1399(b), Plaintiffs allege that they notified Paramount by letter dated April 8, 2014, of its withdrawal liability, and demanded payment in accordance with the payment schedule therein.  (Compl. ¶ 27; April 8 Letter, Ex. F, ECF No. 1; Mot. for Default J. 10:7—14; Watanabe Decl. ¶ 2, ECF No. 25-3.)  Specifically, Plaintiffs allege that they notified Paramount of the due withdrawal liability payment of $1,602,298, payable in one lump sum or in seventeen monthly installments of $92,990 with a final payment of $68,192.  (Compl. ¶ 27; April 8 Letter.)  The Employer Withdrawal Liability letter provided that Paramount could challenge the calculation of withdrawal liability by a timely request for review within 90 days, pursuant to ERISA § 4219(b) [29 U.S.C. § 1399(b)(2)].  (April 8 Letter 106.)  Additionally, the letter provided that any dispute with respect to the determination of withdrawal liability must be resolved through timely initiation of arbitration, pursuant to 29 U.S.C. § 1401(a)(1).  (*Id.*)

---

[3] The Court notes that Exhibit B shows that Paramount signed the MLA on December 3, 2007, not November 13, 1998.  Nonetheless, this discrepancy is inconsequential.

3

1    Plaintiffs allege that Paramount did not timely request review or initiate arbitration,
2    and that the time to do so lapsed.  (Compl. ¶ 31; Mot. for Default J. 13:6—12.)  Under
3    29 U.S.C. § 1399(c)(2), Paramount is required to pay in accordance with the monthly
4    payment schedule laid out in the April 8, 2014, letter "no later than 60 days after the
5    date of the demand"; however, Plaintiffs allege that Paramount failed to pay the first
6    monthly payment by the due date of June 7, 2014.  (Compl. ¶ 32; Mot. for Default J.
7    11:8—9.)    Accordingly, Plaintiffs sent a letter dated July 21, 2014, providing
8    Paramount notice of its nonpayment for the first installment and giving Paramount
9    sixty days to cure its failure.  (Compl. ¶ 32; Mot. for Default J. 11:16—19; July 21
10   Letter, Ex. G, ECF No. 1.)    Plaintiffs allege that Paramount failed to cure its
11   nonpayment of the first installment within sixty days of receiving the July 21, 2014,
12   notice and never paid any withdrawal liability payments, consequently placing it in
13   default pursuant to 29 U.S.C § 1399(c)(5)(A).  (Compl. ¶¶ 30, 33; Mot. for Default J.
14   11:20—25.)  Falling into default accelerated Paramount's withdrawal liability, with
15   the entire unpaid withdrawal liability of $1,602,298 plus interest immediately due and
16   payable to the Plan sponsor—here, Pension Trust—under 29 U.S.C. § 1399(c)(5).
17   (Compl. ¶ 33; Mot. for Default J. 11:26—12:4.)

18   Further, 29 U.S.C. § 1451(b) characterizes Paramount's failure to make a timely
19   withdrawal liability payment as a delinquent contribution.  (Compl. ¶ 34; Mot. for
20   Default J. 13:16—25.)  Accordingly, Plaintiffs filed a Complaint on September 16,
21   2016, seeking judgment against Paramount for the entire balance of the unpaid
22   withdrawal liability, plus interest, liquidated damages, attorney's fees and costs, and
23   other relief as the Court deems appropriate, pursuant to 29 U.S.C. § 1132(g)(2)
24   concerning "awards in actions involving delinquent contributions."  (Compl. ¶ 35;
25   Mot. for Default J. 13:19—25.)

26   Paramount was served on September 27, 2016, and has failed to answer.  (ECF
27   No. 14; Mot. for Default J. 1:26—27.)  On November 4, 2016, the Clerk of Court
28   entered default against Paramount on Plaintiffs' request.  (ECF No. 23; Mot. for

Default J. 1:28—2:1.)  Plaintiffs filed the instant motion for entry of default judgment on December 6, 2016, pursuant to Federal Rule of Civil Procedure 55(b)(2) ("Rule 55(b)(2)").  (Mot. for Default J. 1:1—14.)  Plaintiffs also seek equitable relief under 29 U.S.C. § 1399(a) for an Order compelling Paramount to answer Pension Trust's written request, dated September 19, 2013, for information pertinent to determining withdrawal liability matters.  (Mot. for Default J. 1:6—8, 3:26—6:12; Investigation Letter.)  Paramount has not moved to set aside the entry of default by the Clerk of Court.  (Mot. for Default J. 3:24—25.)[4]

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk of Court enters default under Rule 55(a).  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active servicemember; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter a default judgment.  *Aldabe*, 616 F.2d at 1092.  Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors (the "*Eitel* factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy

---

[4] After considering the papers filed in support of the motions, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV.   DISCUSSION

First, the Court will determine whether Plaintiffs have met the procedural requirements under Local Rule 55-1.  Second, the Court will analyze whether the *Eitel* factors weigh in favor of granting default judgment.  Lastly, the Court will examine Plaintiffs' request for information as equitable relief.

### A.   Procedural Requirements

As a preliminary matter, the Court must determine whether Plaintiffs satisfied the procedural requirements for an entry of default judgment under Local Rule 55-1. Here, Plaintiffs have submitted a declaration stating: (1) the Clerk of Court entered default against Paramount on November 4, 2016; (2) default was entered in this action; and (3) Paramount is not a minor, incompetent person, or active servicemember.  (Grumer Decl. ¶¶ 2—3, ECF No. 25-2.)  Plaintiffs need not show that notice has been served on the defaulting party because Rule 55(b)(2) is inapplicable, as "Paramount has not appeared personally or by a representative in this action."  (Grumer Decl. ¶ 4.)  Thus, Plaintiffs have met the basic procedural requirements and the Court will evaluate the balance of the *Eitel* factors.

### B.   *Eitel* Factors

On balance, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Paramount.  The Court will discuss each factor in turn.

#### 1.   Possibility of Prejudice to the Plaintiffs

If denying default judgment would leave the plaintiff "without a proper remedy or alternate recourse for recovery," there is a possibility of prejudice to the plaintiff. *Bd. of Trs. v. Exhibit Installation Specialists, Inc.*, No. 2:13-cv-08236-ODW(PJWx), 2014 U.S. Dist. LEXIS 56803, at *5-6 (C.D. Cal. Apr. 23, 2014) (citing *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).  Here, those participating in the Pension Trust have been prejudiced by Paramount's repeated

failure to make its withdrawal liability payment, which comprises its share of the Pension Trust's unfunded liability. (Mot. for Default J. 7:3—6.) If default judgment is not entered, Plaintiffs will suffer prejudice because they "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." *See Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005) (citing *Eitel*, 782 F.2d at 1471-72). Therefore, this factor favors entry of default judgment.

### 2. Merits of Plaintiffs' Substantive Claim and Sufficiency of the Complaint

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *DR JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). As to the second and third factors, Plaintiffs must "state a claim on which the [plaintiff] may recover." *Elektra Entm't Grp., Inc.*, 226 F.R.D. at 392 (alteration in original) (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175). When stating a claim for withdrawal liability, Plaintiffs must establish the following:

> (1) Plaintiff is/was a multiemployer pension plan under 29 U.S.C. § 1002(37);
> (2) Defendant is/was an "employer" under 29 U.S.C. § 1381(a), which requires showing that Defendant had an obligation to contribute to the plan;
> (3) Defendant "withdrew" from the plan under 29 U.S.C. § 1381(a);
> (4) Plaintiff notified Defendant of the assessed liability in compliance with the MPPAA;
> (5) Defendant failed to make a payment on the schedule set by the plan; and
> (6) Defendant failed to initiate arbitration in a timely manner.

*Dairy Emps. Union Local No. 17 Christian Labor Ass'n of U.S. Pension Tr. v. Ferreira Dairy*, 5:14-cv-01295-RSWL-MAN, 2015 U.S. Dist. LEXIS 14805, at *7 (C.D. Cal. Feb. 6, 2015).

Plaintiffs' Complaint pleads the elements of a claim for failure to pay withdrawal liability. Plaintiffs allege that Pension Trust maintains a multiemployer pension benefit plan. (Compl. ¶ 5; Mot. for Default J. 9:10.) Plaintiffs also allege that Paramount is an employer that had an obligation to contribute to the plan. (Compl. ¶ 7, 9; MLA.) In addition, Plaintiffs establish that Paramount withdrew from the plan on December 31, 2013, by "permanently ceas[ing] to have an obligation to contribute to the Pension Trust or permanently ceas[ing] all covered operations under the Pension Trust," pursuant to 29 U.S.C. § 1383(a). (Compl. ¶ 22.) Plaintiffs notified Paramount of its assessed liability by letter dated April 8, 2014. (*Id.* ¶ 27; April 8 Letter.) Additionally, Plaintiffs allege that Paramount has failed to make payments in accordance with the scheduled payment plan specified in the April 8, 2014, letter. (Compl. ¶ 30.) Lastly, Plaintiffs allege that Paramount failed to timely initiate arbitration following the April 8, 2014, letter. (*Id.* ¶¶ 27, 31; Mot. for Default J. 13:6—12.) Thus, these allegations establish the necessary elements for Plaintiffs' withdrawal liability cause of action. Further, "[a]fter a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Elektra Entm't Grp., Inc.*, 226 F.R.D. at 392 (citing *TeleVideo Sys., Inc.*, 826 F.2d at 917-18). Therefore, the second and third factors favor entry of default judgment against Paramount.

### 3.   Amount at Stake

This factor "considers the sum of money at stake in relation to the seriousness of the action." *Lehman Bros. Holdings, Inc. v. Bayporte Enters.*, No. C 11-0961-CW (MEJ), 2011 U.S. Dist. LEXIS 141305, at *18 (N.D. Cal. Oct. 7, 2011) (citing *Levi Strauss & Co. v. Toyo Enter. Co.*, 665 F. Supp. 2d 1084, 1097 (N.D. Cal. 2009)). The sum of money at stake "must not be disproportionate to the harm alleged." *Lehman*

*Bros. Holdings, Inc.*, 2011 U.S. Dist. LEXIS 141305, at *18 (internal citations omitted).  If the amount is unreasonable or disproportionately large in comparison to the defendant's conduct, default judgment is disfavored.  *Bd. of Dirs. of the Motion Picture Indus. Pension Plan v. Crossroads Films, Inc.*, No. 2:15-cv-09232-ODW (AJW), 2016 U.S. Dist. LEXIS 81372, at *8-9 (C.D. Cal. June 22, 2016) (internal citations omitted).

Under 29 U.S.C. § 1132(g)(2), in an action to enforce a multiemployer plan in which the fiduciary obtains a favorable judgment, the Court shall award the plan the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
> > (i) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2)(A)-(E).

"Section 1132(g)(2) is 'mandatory and not discretionary.'"  *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984)).  The following requirements must be satisfied for Plaintiffs to be entitled to an award under § 1132(g)(2): "(1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award."  *Nw. Adm'rs, Inc.*, 104 F.3d at 257 (citing *Idaho*

*Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989)).

Here, Plaintiffs have satisfied the requirements to be entitled to a mandatory award under 29 U.S.C. § 1132(g)(2).  First, Paramount was delinquent at the time the action was filed.  (Compl. ¶¶ 33—34; Mot. for Default J. 13:17—25.)  Second, for the reasons contained in this Order, the Court will enter judgment against Paramount.  Third, the relevant plan provisions generally authorize the award Plaintiffs seek. (April 8 Letter; Agreement 20; Mot. for Default J. 15:19—16:1.)

Plaintiffs request $2,077,339 total from Paramount, comprised of the following: $1,602,298 in unpaid contributions, $243,015 in interest on unpaid contributions, $160,230 in liquidated damages, $27,106 in interest on liquidated damages, $44,253 in attorney's fees, and $437 in costs.  (Watanabe Decl. ¶ 11.)  The Court considers each in turn.

### i.    Unpaid Contributions

First, Plaintiffs request $1,602,298 of unpaid contributions following Paramount's failure to cure nonpayment and subsequent default that accelerated the unpaid withdrawal liability plus interest.  (Compl. ¶¶ 27, 30, 33; April 8 Letter; Watanabe Decl. ¶¶ 2, 11.)  The MPPAA "does not call upon the employer to propose the amount of withdrawal liability . . . . it places the calculation burden on the plan's trustees. . . . [who] must set an installment schedule and demand payment as soon as practicable after the employer's withdrawal."  *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal, Inc.*, 522 U.S. 192, 197 (1997) (internal quotation marks omitted).  "Should the employer fail to pay according to the schedule, the plan may, at its option, invoke a statutory acceleration provision. . . . [and] sue to collect the unpaid debt."  *Bay Area Laundry & Dry Cleaning Pension Tr. Fund*, 522 U.S. at 197.

The Court finds that Plaintiffs' requested amount was properly "calculated by the Trust's actuary based on the Trust's record of the Employer's contribution history

with the Trust . . . . [U]nder such provisions an employer who withdraws from the Plan is liable to the Trust for an allocable share of the Plan's unfunded vested benefit liability." (*See* April 8 Letter 105.)  The amount of $1,602,298 was calculated based on the statutory formula provided in 29 U.S.C. § 1381(b)(1).  (April 8 Letter.)  In addition, Plaintiffs have submitted evidence of the withdrawal liability calculation and confirmation by the Manager of the Delinquency Department of Southwest Carpenters Administrative Corporation that the calculated amount of $1,602,298 is accurate. (April 8 Letter; Watanabe Decl. ¶ 2.)  Plaintiffs have also submitted evidence demonstrating Paramount's failure to make any withdrawal liability payments. (Grumer Decl. ¶ 4.)  Accordingly, the court awards Plaintiffs $1,602,298 in unpaid contributions, pursuant to 29 U.S.C. §§ 1399(c)(5), 1132(g)(2)(A).

### ii.    Interest on Unpaid Contributions

Second, for interest on unpaid contributions, "ERISA specifically dictates that a court award prejudgment interest in unpaid-contribution actions . . . . The interest rate is either the rate set under the relevant agreements, if any, or the rate established under 26 U.S.C. § 6621." *Trs. of the S. Cal. IBEW-NECA Pension Plan v. Gartel Corp.*, No. 2:11-cv-5929-ODW(SHx), 2013 U.S. Dist. LEXIS 59218, at *8 (C.D. Cal. Apr. 19, 2013).  Here, Plaintiffs invoke the former interest-rate determination under the relevant agreement, which provides that "[c]ontributions to the fund . . . unpaid by the first day of the month following the month in which they are due shall bear interest from such date at the rate of seven percent (7%) per annum."  Using this formula, Plaintiffs seek $243,015.  (Agreement 20; Mot. for Default J. 14:16—15:7).  Plaintiffs calculated the prejudgment interest amount as follows: Plaintiffs mailed a letter dated July 21, 2014, to Paramount with notification of its nonpayment for the first installment and giving Paramount 60 days to cure.  (July 21 Letter.)  The sixty day period ran at the end of September 2014.  (*Id.*)  The first day of the month following September 2014 was October 1, 2014, thus marking the start of interest accrual at 7% per annum.  (*Id.*; Mot. for Default J. 15:2—7.)  Plaintiffs calculated this interest rate

from October 2014 until the date of the filing of the motion for default judgment, December 1, 2016, with the following equation: (($1,602,298 x .07/12) x 26).  (Mot. for Default J. 15:2—7; Watanabe Decl. ¶ 6.)  This is the unpaid contribution amount multiplied by the interest rate provided in the relevant agreement—7% per annum— all multiplied by the 26 months between October 2014 and December 2016.  The sum from this equation is $243,015.  (Mot. For Default J., 15:2—7.)  Paramount accordingly owes Plaintiffs $243,015 in interest on the unpaid contribution, pursuant to 29 U.S.C. § 1132(g)(2)(B).

### iii. *Liquidated Damages*

Third, Plaintiffs request $160,230 in liquidated damages.  (Mot. for Default J., 14:2—14; Watanabe Decl. ¶ 11.)   Under ERISA, "a prevailing trust fiduciary is entitled the greater of an amount equal to the interest on the unpaid contributions or the liquidated damages provided under the applicable agreements. . . . the statute caps the liquidated damages at 20 percent of the unpaid contributions."  *Trs. of the S. Cal. IBEW-NECA Pension Plan*, 2013 U.S. Dist. LEXIS 59218, at *9 (citations omitted). The agreements here stated that in an occasion where the employer becomes delinquent, "the amount of damages to the Fund and Pension Plan . . . shall be presumed to be the sum of . . . 10% of the amount of the Contribution or Contributions due . . . which amount shall become due and payable to the Fund and liquidated damages."  (Agreement 20.)  Accordingly, Plaintiffs calculated liquidated damages by multiplying $1,602,298—the unpaid withdrawal liability—by 10%, equaling Plaintiffs' request of $160,230.  (Mot. for Default J. 14:7—14; Watanabe Decl. ¶ 11.)   Accordingly, the Court awards $160,230 in liquidated damages to Plaintiffs, pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii).

### iv. *Interest on Liquidated Damages*

Fourth, Plaintiffs request $27,106 as interest on the liquidated damages. However, 29 U.S.C. § 1132(g)(2) does not provide for recovery of interest on liquidated damages.  While the statute allows "other legal or equitable relief as the

court deems appropriate," the Court does not find that interest on liquidated damages meets this standard. *See* 29 U.S.C. § 1132(g)(2)(E). Thus, the Court declines to award interest on liquidated damages to Plaintiffs.

### v.   Attorney's Fees and Costs

Fifth, Plaintiffs request $44,253 in reasonable attorney's fees. (Mot. for Default J. 15:19—24; Watanabe Decl. ¶ 11.) "The Ninth Circuit has recognized that 'attorney's fees are no longer discretionary in § 1132(g)(2) cases.'" *Trs. of the S. Cal. IBEW-NECA Pension Plan*, 2013 U.S. Dist. LEXIS 59218, at *10 (quoting *Operating Eng'rs Pension Tr. v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984)). If the relevant statue provides for an award of reasonable attorney's fees, Local Rule 55-3 sets out a schedule for attorney's fees in default judgment cases. *See Bd. of Dirs. of the Motion Picture Indus. Pension Plan v. S&L Tramondo, Inc.*, CV 16-5771-RSWL-KSx, 2016 U.S. Dist. LEXIS 174450, at *22 (C.D. Cal. Dec. 15, 2016) (citing *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1016 (C.D. Cal. 2014)). Here, the judgment exclusive of costs is the withdrawal liability of $1,602,298, plus the interest on unpaid contributions of $243,015, plus the liquidated damages of $160,230, equaling a total of $2,005,543. (Watanabe Decl. ¶ 11.) This is less than the subtotal Plaintiffs used to calculate attorney's fees because the Court is not awarding the requested $27,106 of interest on liquidated damages. (*Id.*) Under Local Rule 55-3's schedule, if the amount of judgment exclusive of costs is over $100,000, the attorney's fees award shall be $5,600 plus 2% of the amount over $100,000. Thus, the appropriate calculation is: ($5,600 + (.02 x ($2,005,543 - $100,000))), equaling $43,711. Accordingly, the Court awards Plaintiffs $43,711 in reasonable attorney's fees, pursuant to 29 U.S.C. § 1132(g)(2)(D) and Local Rule 55-3.

Finally, Plaintiffs seek $437 in costs incurred pursuing this action: $400 for the filing fee and $37 for the service of the summons and complaint. (Mot. for Default J. 15:25—16:1; Grumer Decl. ¶ 5; Watanabe Decl. ¶ 11.) Under 29 U.S.C. § 1145, where "judgment in favor of the plan is awarded, the court shall award the plan . . . the

costs of the action," pursuant to 29 U.S.C. § 1132(g)(2)(D).  For the reasons contained in this Order, the Court is awarding judgment in favor of Plaintiffs, and they are consequently entitled to costs of suit.  The Ninth Circuit has "stated that if separate billing for expenses 'is the prevailing practice in the local community,' such charges 'are recoverable as reasonable attorney's fees under [29 U.S.C. § 1132(g)(2)(D)].'" *Trs. of the Operating Eng'rs Pension Tr. v. Munson Plumbing, Inc.*, No. EDCV 10-00970 VAP(OPx), 2011 U.S. Dist. LEXIS 9761, at *15-16 (C.D. Cal. Jan. 21, 2011) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257-59 (9th Cir. 2006)).  Under Local Rule 54-3.1, filing fees are recoverable as a cost.  *See GCIU-Emp'r Ret. Fund v. Kutztown Publ'g Co.*, No. 2:15-cv-08712-ODW-AFM, 2016 U.S. Dist. LEXIS 62475, at *15 (C.D. Cal. May 6, 2016).  Under Local Rule 54-3.2, fees for service of process are also recoverable.  *Id.*  The filing fee of $400 is reflected in the Complaint's docket text for ECF No. 1.  (Grumer Decl. ¶ 5.)   Additionally, Plaintiffs have provided an invoice from the process server for service of process on Paramount amounting to $37.  (Process Server Service Detail, Ex. 1, ECF No. 25-2; Grumer Decl. ¶ 5.)   Accordingly, the Court awards $437 in costs to Plaintiffs, pursuant to 29 U.S.C. § 1132(g)(2)(D).

In conclusion, the Court awards Plaintiffs $2,049,691 in damages and costs.  This amount is proportionate to the alleged harm, and, "[g]iven that Plaintiffs' damages are set by both statute and contract, there is little concern that these damages are disproportionate to Defendants' conduct."  *See Bd. of Dirs. of the Motion Picture Indus. Pension Plan*, 2016 U.S. Dist. LEXIS 81372, at *9.  Therefore, this factor favors entry of default judgment against Paramount.

### 4.    Possibility of Disputed Material Facts

This *Eitel* factor "considers the possibility that material facts are disputed." *GCIU-Emp'r Ret. Fund*, 2016 U.S. Dist. LEXIS 62475, at *8 (citing *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177).   Here, the issues are straightforward: "did Defendant withdraw from the fund[;] did [Plaintiffs] send proper notice to Defendant of the

amount of withdrawal liability owed[?]"  *GCIU-Emp'r Ret. Fund*, 2016 U.S. Dist. LEXIS 62475, at *8 (citing *Auto. Indus. Pension Tr. Fund v. Bi-City Paint & Body Co.*, No. C 12-01972 LB, 2012 U.S. Dist. LEXIS 183418, at *5 (N.D. Cal. Dec. 6, 2012)).  It is unlikely that material facts will be disputed when "issues are easily ascertainable." *Auto. Indus. Pension Tr. Fund*, 2012 U.S. Dist. LEXIS 183418, at *16.

Paramount has not responded to the complaint or delinquency notice.  (April 8 Letter.)  In addition, no attorney has appeared to represent Paramount in this case or dispute Plaintiffs' demands for damages and costs.  (ECF No. 23; Mot. for Default J. 2:11.)  Hence, there is little possibility for disputed material facts.  Further, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp., Inc.*, 226 F.R.D. at 393.  Therefore, this factor favors entry of default judgment against Paramount.

## 5.    Possibility of Excusable Neglect

This factor determines "whether the default was due to excusable neglect." *Eitel*, 782 F.2d at 1472.  Here, Plaintiffs notified Paramount of its withdrawal liability, but Paramount did not respond, pay, or cure the delinquency.  (Compl. ¶¶ 27, 30—33; April 8 Letter.)  Paramount also failed to cure its nonpayment of the first installment and never paid any withdrawal liability payments.  (Compl. ¶¶ 30, 33.)  Thereafter, Paramount was properly served by substitute service on the office manager on September 27, 2016.  (ECF No. 14; Mot. for Default J 1:26—27.)  Paramount did not plead or otherwise defend against the complaint.  (Mot. for Default J. 1:27—28.)  The Clerk of Court entered default against Paramount on November 4, 2016, and Paramount has not moved to set aside entry of default.  (ECF No. 23; Mot. for Default J. 3:24—25.)  On these facts, the possibility of excusable neglect is remote.  *See Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Tennyson Elec., Inc.*, No. 2:16-cv-04908-ODW (GJSx), 2016 U.S. Dist. LEXIS 155013, at *7 (C.D. Cal. Nov. 8,

2016) (explaining that because "Plaintiff personally delivered the Complaint to a manager at Defendant's office," there was only a remote possibility of excusable neglect).

Further, "default judgment is favored when the defendant fails to respond after being properly served." *GCIU-Emp'r Ret. Fund*, 2016 U.S. Dist. LEXIS 62475, at *9 (citing *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012)).   Over four months have elapsed since Paramount was served with the summons and complaint, and three months have elapsed since entry of default by the Clerk of Court.  Because there is little chance of excusable neglect, this factor weighs in favor of granting default judgment against Paramount.

### 6.     Policy for Deciding Cases on the Merits

Lastly, "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  However, a "[d]efendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Moreover, "[w]hile this factor will always disfavor the entry of judgment, it alone does not outweigh the other factors that clearly favor entry of judgment."  *Constr. Laborers Tr. Funds for S. Cal. Admin. Co.*, 2016 U.S. Dist. LEXIS 155013, at *8.  Paramount has failed to answer the Complaint or move to set aside the entry of default.  (Mot. for Default J. 1:27—28; 3:20—25.)  Therefore, this factor does not preclude entering default judgment.

## C.     Equitable Relief

In addition to monetary damages**,** Plaintiffs seek an Order compelling Paramount to furnish information Plaintiffs believe is reasonably necessary to determine withdrawal liability matters.  (Mot. for Default J. 3:26—6:12.)  Plaintiffs make this request under 29 U.S.C. § 1399(a), which requires that "[a]n employer shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor

to comply with the requirements of this part." (Mot. for Default J. 3:27—4:2.)  Due to Paramount's delinquency, Plaintiffs make this request for equitable relief pursuant to 29 U.S.C. § 1132(g)(2)(E), which provides that the Court shall award "other legal or equitable relief as the court deems appropriate" in an action to enforce a multiemployer plan in which the fiduciary obtains a favorable judgment.  (Compl. ¶¶ 33—34; Mot. for Default J. 13:17—20.)

By letter dated September 19, 2013, to Paramount and CAS, Plaintiffs requested information to which Plaintiffs are entitled under 29 U.S.C. § 1399(a).  (Compl. ¶ 25; Investigation Letter.)  Specifically, Plaintiffs requested information to determine whether Paramount and CAS are trades or businesses under common control.  (Compl. ¶ 25; Investigation Letter.)  Plaintiffs request eight categories of information they believe is reasonably necessary to determine whether Paramount and CAS are trades or businesses under common control pursuant to 29 U.S.C. § 1301(b).  (Compl. ¶ 25; Investigation Letter; Mot. for Default J. 3:26—6:12.)  This information is reasonably necessary because under ERISA, "trades and businesses operated under common control shall be treated as a single entity and thus are jointly and severally liable for each other's withdrawal liability."  *Auto. Indus. Pension Tr. Fund v. Maier's Garage, Inc.*, No. CV-09-2551 JSW (EDL), 2009 U.S. Dist. LEXIS 104076, at *8 (N.D. Cal. Oct. 23, 2009) (citing *Bd. of Trs. of the W. Conference of Teamsters Pension Tr. Fund v. Lafrenz*, 837 F.2d 892, 893 (9th Cir. 1988)).  Based on Plaintiffs' uncontested allegations, Paramount has not responded to this request for information. (Compl. ¶ 25; Mot. for Default J. 6:8—12.)  Given 29 U.S.C. § 1399(a)'s mandatory nature, the Court finds the information requested by Plaintiffs is reasonably necessary to enable compliance with the governing MLA and ERISA, and orders Paramount to produce such information by filing a written submission with this Court **within 60 days of the date of this Order**.

## V.    CONCLUSION

For the reasons discussed above, Plaintiffs' motion for default judgment is **GRANTED**.   (ECF No. 25.)   The Court **ORDERS** Paramount to respond to Plaintiffs' request for information by filing a written response with this Court **within 60 days of the date of this Order**.   Paramount shall pay Plaintiffs a total of $2,049,691 in damages and costs, consisting of the following amounts:

- $1,602,298 in unpaid contributions;
- $243,015 in prejudgment interest;
- $160,230 in liquidated damages;
- $43,711 in attorney's fees; and
- $437 in costs.

The Court will enter judgment in accordance with this order.

**IT IS SO ORDERED.**

February 7, 2017

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**